UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-6114-CR-ZLOCH

UNITED STATES OF AMERICA,

        Plaintiff,

v.

SEAN FITZGERALD THOMPSON,

        Defendant

_____/



## OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

The defendant, Sean F. Thompson, by and through undersigned counsel, hereby respectfully

files the following objection to the presentence investigation report prepared by the probation office:

### Acceptance of Responsibility (PSI ¶¶ 11,19)

In paragraphs 11 and 19 of the presentence investigation report, the probation officer states

that because Mr. Thompson had not provided the officer with a letter of acceptance, Mr. Thompson

was not eligible for a downward adjustment for acceptance of responsibility. Mr. Thompson

respectfully objects to the probation officer's conclusion. Since his arrest on this offense, Mr.

Thompson has clearly demonstrated acceptance of responsibility and is clearly eligible for a two-level

downward adjustment for acceptance of responsibility.

The Sentencing Guidelines mandate that "[i]f the defendant clearly demonstrates acceptance

of responsibility for his offense, decrease the offense level by 2 levels." U.S.S.G. § 3E1.1. The

commentary to that section further provides that

[e]ntry of a plea of guilty prior to the commencement of trial combined with truthfully

admitting the conduct comprising the offense of conviction, and truthfully admitting
or not falsely denying any additional relevant conduct for which he is accountable .
. . will constitute significant evidence of acceptance of responsibility for the purposes
of subsection (a).

U.S.S.G. § 3E1.1, comment. (n.3).

Following the return of the indictment against Mr. Thompson, counsel for Mr. Thompson
informed AUSA Rosenthal that the case would likely be resolved via a guilty plea. Mr. Thompson
and the government soon entered into plea agreement. On July 7, 2000, Mr. Thompson entered a
plea of guilty to count one of the indictment. The government dismissed counts two and three.

At the change of plea hearing, Mr. Thompson confessed to the charged offense, unequivocally
admitting his guilt to the offense and accepting responsibility for his actions. Mr. Thompson's
truthful statements were accepted by this Court.

Mr. Thompson's actions clearly demonstrate his acceptance of responsibility as required by
§ 3E1.1. In addition, Mr. Thompson has also made a written confession that has been forwarded to
the probation officer. In light of the actions taken by Mr. Thompson, he respectfully requests that
he be given the two-level downward adjustment based on his acceptance of responsibility pursuant
to U.S.S.G. § 3E1.1.


**Ability to Pay Fine and Fine Range (PSI ¶¶ 49-55, 63):**

In paragraph **63**, the probation officer states that the fine range is $1,000.00 to $10,000.00.
Mr. Thompson objects to that statement. As noted above, Mr. Thompson has met all of the
conditions for acceptance of responsibility. Because the proper offense level is **6**, the proper fine
range becomes $500.00 to $5,000.00. *See* U.S.S.G. § 5E1.2(c)(3).

2

In paragraph **55** of the PSI, the probation officer makes the following conclusion and recommendation "[g]iven the defendant's current financial condition and *considerable monthly cash flow*, it appears that he does have the ability to pay a fine during a term of supervision." PSI ¶ 55 (emphasis added). Mr. Thompson respectfully objects to the probation officer's conclusion and recommendation

*Method of Calculation.* Initially, it must be noted that the probation officer's erroneous conclusion was the result of a faulty methodology used to determine the net monthly cash flow in paragraph **49** of the PSI. While it is a fact that Mr. Thompson and Mr. Freeney share living expenses, the probation officer improperly included Mr. Freeney's income in the calculation of net cash flow *without* deducting Mr. Freeney's individual expenses.[1]

There are two proper methods for determining Mr. Thompson's net monthly cash flow, and the probation officer unfortunately followed neither. Under the first method, if Mr. Freeney's income is going to be included in the calculation, then his personal expenses must be deducted in order to get an accurate financial picture of the net monthly cash flow available to both Mr. Thompson and Mr. Freeney

Under the second method, only Mr. Thompson's finances are used. Thus, his personal income would be offset by his personal expenses. The fact that he and Mr. Freeney share living expenses would be accounted for by subtracting only half of the shared living expenses. Mr. Thompson

---

[1] For example, Mr. Freeney has monthly car payments of $240.00 and monthly car insurance payments of $98.00. He also tithes 10% of his income to his church. Yet the nearly $600.00 worth of expenses were not included in the calculation of monthly cash flow. The calculation also failed to credit Mr. Freeney with the basic individual expenses credited to Mr. Thompson (clothing, transportation, etc.)

respectfully requests that this Court employ this method of calculation. Mr. Freeney had no part in the commission of the instant offense, and thus, he should not be directly burdened by any fine imposed as part of Mr. Thompson's sentence. As noted above and demonstrated in the following calculation, the fact that Mr. Freeney and Mr. Thompson share expenses would still be taken into account.

*Ability to Pay* Mr. Thompson respectfully states that he is financially unable to pay any fine and that he is not likely to become able to pay any fine. *See* U.S.S.G. § 5E1.2(a). Using the proper method for determining net monthly cash flow and the figures used in the PSI, Mr. Thompson's actual monthly net cash flow is as follows:

Income

| | |
|---|---|
| Mr. Thompson's monthly income | **$1,500.00** |

Expenses

| | |
|---|---|
| Home rent (half of the total rent) | $266.50 |
| Electricity (half of total) | $37.50 |
| Telephone (half of total) | $100.00 |
| Groceries and Supplies (half of total) | $200.00 |
| Cable (half of total) | $22.50 |
| Automobile payment | $329.00 |
| Automobile insurance | $90.00 |
| Minimum Installment Payments | $100.00 |
| Transportation | $120.00 |
| Clothing | $100.00 |
| Child Support | $400.00 |
| **Total Expenses** | **$1684.50** |
| **Net Monthly Cash Flow (negative)** | **($184.50)** |

4

The numbers used by the probation officer in the PSI reflect a negative monthly cash flow for Mr Thompson  However, two changes need to be made to these figures  First, Mr. Thompson's car payments will soon disappear  *See* PSI ¶ 51  Second, Mr. Thompson has two expenses not reflected in the PSI  1) Mr. Thompson pays his son's yearly school tuition of $2800.00 in four payments (approximately $233 33 per month), and 2) Mr Thompson, pursuant to his religious beliefs, tithes approximately 10% of his income to his church (approximately $150 00 per month).[2] Adding the two expenses and deleting the car payments, Mr Thompson's cash flow becomes a negative **$238.83**

The Sentencing Guidelines provide that "[t]he Court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine " U S S.G. § 5E1 2(a)  These calculations demonstrate that Mr Thompson is unable to pay a fine and that he is unlikely to become able to pay a fine.  Thus, this Court should not impose a fine on Mr Thompson  *See* Id

In addition, any fine imposed on Mr Thompson would place an unjust burden on his dependants  *See* U S S G. § 5E1 2(d)(3) (court should "shall" take into account the "burden that the fine places on the defendant and his dependants")  Mr Thompson pays child support and school tuition for his children  These payments are not made pursuant to a court order, but are instead voluntary payments made by Mr Thompson out of a sense of duty and love for his children  A court-ordered fine would severely affect Mr Thompson's ability to provide support to his children

Finally, Mr Thompson is aware that his actions will have severe consequences beyond any

---

[2]    For example, records from the New Mount Olive Baptist Church indicate that in 1999, Mr. Thompson tithed $2,458.04 to the church.

5

punishment imposed by this Court. Mr Thompson will likely be subject to a deportation or removal hearing based on his guilty plea and sentence in this case. This collateral consequence is another factor that the Court must consider before imposing decided whether to impose a fine. *See* U S S G § 5E1 2(d)(5),(8).

Mr. Thompson has demonstrated an inability to pay a fine in this case. In addition, the imposition of a fine will have a dire effect on Mr. Thompson, his partner, his wife and his two young children. Finally, the stark reality is that Mr Thompson will likely face deportation or removal proceedings based on the instant offense. For all of these reason, Mr. Thompson respectfully requests that this Court waive the imposition of any fine as part of his sentence. *See* U S.S G. § 5E1 2(e).

**Miscellaneous Objections.**

In addition to the above noted objections, Mr Thompson respectfully notes his objections to the following factual statements in the PSI. Mr Thompson acknowledges that these factual inaccuracies may not affect the sentence imposed by this Court, but they are nevertheless noted to ensure that this Court has an accurate record before it

**Paragraph 6** Mr Thompson did not report to the passport office on April 18, 2000. The high school diploma was one of several documents taken from his possession when he was taken into custody

**Paragraph 29.** Mr. Thompson's parents *separated* when he was two years old, but they were not divorced until Mr Thompson was an adult

**Paragraph 31.** Mr Thompson met Mr. Freeney in 1998 They have lived together since April 1998 Mr Freeney is 35

6

**Paragraph 32.** Mr Thompson initially deposited monies to secure his apartment in late 1997. His first lease began in January of 1998  His lease has been renewed annually.

**Paragraph 34.** Mr Thompson never tested positive for Hepatitis B.  He was treated for jaundice in 1997

**Paragraph 35.** Mr Thompson was treated at Jackson Memorial Hospital in December of 1996  The only treatment he received there was the plate placed in his head  The other treatment for the accident was performed in Jamaica

**Paragraphs 47 and 48.** From 1994 to August 1997, Mr Thompson only worked at the Lucayan Beach Resort. From 1990 to 1994, Mr Thompson worked at the other resorts listed in paragraph 47  These facts were related to the probation officer

**Paragraph 51.** Mr Thompson never reported the value of his furniture  He estimates that the value of his furniture well exceeds $1,000.00.

7

WHEREFORE, Defendant, Sean F. Thompson, respectfully requests this Court: 1) grant him a two-level downward adjustment based on his acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, 2) waive any fine as part of his sentence; and 3) sentence him to a one-year term of probation that includes the two months already spent on home detention.

Respectfully submitted,

KATHLEEN M. WILLIAMS
FEDERAL PUBLIC/DEFENDER

By _____

Bernardo Lopez
Assistant Federal Public Defender
Florida Bar No. 884995
101 N.E. Third Avenue, Suite 202
Ft. Lauderdale, FL 33301-1100
Telephone: (954) 356-7436/Facsimile(954)356-7556

8

**A P P E N D I X**

August 28. 2000

Dear Judge Zloch:

Around April 10, 2000, I. Sean Fitzgerald Thompson. made a materially false statement on an application for a United States passport in order to get a U.S. Passport. I Stated on the application that I was a United States citizen born in Miami. Florida when in fact I knew that I was a citizen of the Bahamas and not a citizen of the United States.

Respectfully yours.

Sean Fitzgerald Thompson

**Contributor's Name:** Sean Thompson
**Envelope Number:**

*1999*

| Posting Date | Fund | Description | Year | Check # | Gift |
|---|---|---|---|---|---|
| 01/03/1999 | 1 General Fund | | 1999 | | $22.60 |
| 02/07/1999 | 1 General Fund | | 1999 | | $49.20 |
| 02/07/1999 | 1 General Fund | | 1999 | | $89.70 |
| 02/07/1999 | 1 General Fund | | 1999 | | $73.23 |
| 02/07/1999 | 1 General Fund | | 1999 | | $56.40 |
| 02/07/1999 | 1 General Fund | | 1999 | | $17.74 |
| 02/14/1999 | 1 General Fund | | 1999 | | $60.90 |
| 02/14/1999 | 1 General Fund | | 1999 | | $81.00 |
| 02/28/1999 | 4 Pastor's Anniv. | | 1999 | | $30.00 |
| 02/28/1999 | 4 Pastor's Anniv. | | 1999 | | $54.20 |
| 03/07/1999 | 1 General Fund | | 1999 | | $45.00 |
| 03/14/1999 | 1 General Fund | | 1999 | | $66.20 |
| 03/21/1999 | 1 General Fund | | 1999 | | $50.00 |
| 03/28/1999 | 1 General Fund | | 1999 | | $104.40 |
| 04/11/1999 | 1 General Fund | | 1999 | | $77.90 |
| 04/11/1999 | 1 General Fund | | 1999 | | $36.40 |
| 04/18/1999 | 1 General Fund | | 1999 | | $50.00 |
| 04/25/1999 | 1 General Fund | | 1999 | | $93.00 |
| 05/02/1999 | 1 General Fund | | 1999 | | $91.27 |
| 05/09/1999 | 2 Building Fund | | 1999 | | $51.20 |
| 05/16/1999 | 1 General Fund | | 1999 | | $75.10 |
| 05/30/1999 | 1 General Fund | | 1999 | | $30.00 |
| 05/30/1999 | 1 General Fund | | 1999 | | $48.00 |
| 06/06/1999 | 1 General Fund | | 1999 | | $94.00 |
| 06/13/1999 | 1 General Fund | | 1999 | | $40.00 |
| 06/20/1999 | 1 General Fund | | 1999 | | $60.10 |
| 06/27/1999 | 1 General Fund | | 1999 | | $41.50 |
| 07/04/1999 | 1 General Fund | | 1999 | | $72.00 |
| 07/25/1999 | 1 General Fund | | 1999 | | $180.00 |
| 07/25/1999 | 1 General Fund | | 1999 | | $50.00 |
| 08/01/1999 | 1 General Fund | | 1999 | | $25.00 |
| 08/29/1999 | 1 General Fund | | 1999 | | $70.00 |
| 09/12/1999 | 1 General Fund | | 1999 | | $37.00 |
| 09/26/1999 | 1 General Fund | | 1999 | | $109.00 |
| 10/10/1999 | 1 General Fund | | 1999 | | $41.00 |
| 10/24/1999 | 1 General Fund | | 1999 | | $41.00 |
| 11/07/1999 | 1 General Fund | | 1999 | | $63.00 |
| 11/21/1999 | 1 General Fund | | 1999 | | $51.00 |
| 12/19/1999 | 1 General Fund | | 1999 | | $130.00 |

$2,458.04

Date: 09/05/2000                    New Mount Olive Baptist Church                    Page: 1
Individual Detail Listing

**Contributor's Name:** Sean Thompson                    *2000*
**Envelope Number:**

| Posting Date | Fund | Description | Year | Check # | Gift |
|---|---|---|---|---|---|
| 01/16/2000 | 1 General Fund | | 2000 | | $58.00 |
| 01/30/2000 | 1 General Fund | | 2000 | | $85.00 |
| 02/13/2000 | 1 General Fund | | 2000 | | $82.00 |
| 02/27/2000 | 1 General Fund | | 2000 | | $76.00 |
| 03/12/2000 | 1 General Fund | | 2000 | | $58.00 |
| 03/12/2000 | 4 Pastor's Anniv. | | 2000 | | $5.00 |
| 03/26/2000 | 1 General Fund | | 2000 | | $79.00 |
| 04/09/2000 | 1 General Fund | | 2000 | | $79.00 |
| 05/21/2000 | 1 General Fund | | 2000 | | $48.00 |
| 05/28/2000 | 1 General Fund | | 2000 | | $67.00 |
| 06/04/2000 | 1 General Fund | | 2000 | | $5.00 |
| 06/18/2000 | 1 General Fund | | 2000 | | $20.00 |
| 07/02/2000 | 1 General Fund | | 2000 | | $22.00 |
| 07/16/2000 | 1 General Fund | | 2000 | | $6.00 |
| 07/23/2000 | 1 General Fund | | 2000 | | $5.00 |
| 07/30/2000 | 1 General Fund | | 2000 | | $20.00 |
| 07/30/2000 | 1 General Fund | | 2000 | | $5.00 |
| 08/06/2000 | 1 General Fund | | 2000 | | $3.00 |
| 08/13/2000 | 1 General Fund | | 2000 | | $5.00 |

$728.00

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was mailed on this $\underline{5}$ day of

September, 2000 to

Lynn Rosenthal
Assistant United States Attorney
299 East Broward Boulevard
Fort Lauderdale, Florida 33301

Frank E Smith
U S Probation Officer
Federal Courthouse Building
299 East Broward Blvd , Room 409
Fort Lauderdale, Florida 33301-1865

Bernardo Lopez

x 1.1491 Z  s,iid obacation il p.l

10